McCUNE, Respondent, v. McCUNE, Appellant.

1. When a person parts with his property, he may attach such lawful conditions to the transfer as he thinks proper.
2. Slaves were devised by a husband to his widow for life, with remainder to their children at her death. The persons appointed by the will to make the division among the heirs, with the consent of the widow made a division of the slaves among the heirs and widow, she reserving the right to take back the slaves at any time she should choose to do so. This condition was not communicated to the heirs. *Held*, that the acts and declarations of the heirs were inadmissible in evidence against the widow to show that she had consented to an unconditional surrender of the slaves allotted and an abandonment of her life estate, unless it were shown that she had knowledge of, or assented to, or acquiesced in, such acts and declarations, in some form or other.

*Appeal from Ralls Circuit Court.*

It is deemed unnecessary to set forth the facts more fully than they appear in the opinion of the court.

*Henderson*, for appellant.

I. The mode of appraising the slaves, the valuation at their full worth, the payment of money between the heirs to make their slaves equal, the agreement of the heirs to support an aged slave whose support devolved on the plaintiff in consideration of the division, the fact that notes previously given by the heirs to the executor were adjusted in this transaction, their rights made equal in every thing to that date, and all obligation over to the estate cancelled at the time, with the knowledge and consent of plaintiff, and that one of the parties receiving slaves on that day and under the same distribution and division was permitted to take them to California without objection on her part, and under the belief of the other heirs that the division was final, conclusive and operative on all the parties, are facts throwing light upon the transaction, and the court should not have excluded them. J. S. McCune's letter should have been admitted. The instructions asked and overruled should have been given. The

instruction given for plaintiff was erroneous, in that it declared it was unnecessary to communicate the conditions of the possession to the defendant.

*Broadhead*, for respondent.

EWING, Judge, delivered the opinion of the court.

This was an action by the widow of Samuel McCune, deceased, to recover the possession of three slaves, which, with all the other property of the testator, were given by his will to respondent during her life or widowhood, with power to dispose of all or any of the slaves should they become disobedient; and at her death said property was to be divided among the three children, Henry, Joseph and Rebecca. William L. McCune, John S. McCune and Thomas Cleaver were appointed by the will to make division of the property. In 1852 and after testator's death, the three last named persons met at the house of respondent and made division of a portion of the slaves among the heirs. The slaves in controversy were assigned to appellant and his wife Rebecca, and he took possession of them.

The respondent insists that the slaves were merely loaned to appellant, and that the right was expressly reserved to take them back at any time. The appellant alleges that the partition was intended as a surrender and abandonment of her life estate, and that no conditions were annexed. On the trial respondent read the will, introduced some evidence as to the value of the slaves and their services, and closed. Appellant then proved the division of the slaves, as already stated, at the house of the respondent; that it was made as equal as possible among the heirs; and that those allotted to appellant shortly thereafter went into his possession, three or four being assigned at the same time to the respondent. It was also proved by John S. McCune, the executor of the will, that the division was made at his instance; that, being desirous of getting the estate off his hands, the legatees being of age, he proposed to respondent that she should reserve

such of the slaves as she wished, and consent to a division of
the remainder among the heirs; that she at first objected,
saying that it was the request of the testator that the negroes
be kept together during her life, and that she had promised
him to do so, but finally consented, reserving the right to
take them back at any time she chose to do so; that among
the slaves selected by the widow was an old woman, and
upon witness advising her to take a younger one, she declin-
ed, saying she could take any of them back whenever she
desired. After this the division was made as stated; the
witness took receipts as executor from the parties for the
negroes. The heirs were not informed by him of any con-
ditions, nor of the conversation he had with the respondent.
He declined communicating the conditions to appellant and
the other heirs in order to avoid unpleasant feelings on their
part towards the respondent and to have the business of the
estate settled. Appellant then offered to prove that in the
valuation of the slaves they were valued regardless of the
widow's life estate; that in the distribution an old and de-
crepit slave in respondent's possession, and a part of the prop-
erty bequeathed to her by her late husband, was to be taken
care of and supported by the three legatees; also that the
heirs paid money to each other at the time to make the
shares equal; and that one of the legatees had since removed
to California taking the slaves allotted to him with the know-
ledge of the respondent. He further offered to prove that
all the property received by the legatee, Rebecca, in the life-
time of her first husband Wright was turned over to the
witness (Cleaver) for the benefit of the two children of said
Wright. The rejection of this evidence is assigned for error.

Much of this evidence was wholly irrelevant and had no
tendency to prove any assent, either express or implied, to
an unconditional surrender of the slaves in controversy to
the appellant, or any abandonment of her life estate in them.
That one of the heirs may have taken the slaves allotted to
him out of the state with respondent's knowledge, is entirely
consistent with the conditions on which she parted with them

and with the right she asserts to those in controversy. As
to the acts and declarations of third persons concerning the
division of the slaves, and their valuation as it respected re-
spondent's life estate, it is not perceived how she is to be
affected by them without showing that she had knowledge
of them and gave her assent or, acquiescence in some form
or other. The evidence tended to prove not how the respon-
dent understood the arrangement, but how it was understood
by other persons, and was properly excluded. The appellant
also offered to read in evidence a letter of Jno. S. McCune
to Samuel C. McCune, which was excluded. This letter was
dated St. Louis, October, 1852, about two months after the
division of the slaves took place, and relates to matters for-
eign to the issue. The objections to the other evidence
excluded apply with equal force to this.

On the part of the respondent the court instructed the jury
that they might infer a gift from the circumstances of the
case in the absence of acts and declarations to the contrary,
but that inference may be rebutted by acts or declarations
made at the time to the contrary, and if they find that plain-
tiff, when she assented to the division of the slaves, attached
any condition to that assent, it was not necessary to commu-
nicate that condition to the defendant, but she can only be
held to have parted with the property upon such conditions.
The court, on its own motion, instructed the jury, submit-
ting to them the question of the intent and purpose with
which the slaves in controversy were delivered to the appel-
lant, and that if there was a delivery to appellant shortly
after his marriage with respondent's daughter without noti-
fying him of any conditions, or that she intended to loan the
slaves only, the law would presume a gift of her life interest
in the slaves as an advancement, but that this presumption
might be rebutted by the evidence. The jury were also told
by an instruction given at the instance of appellant, that if
the slaves were delivered to him with the understanding on
the part of respondent that she could reclaim them at pleas-
ure, yet they ought to find for defendant if she afterwards

abàndonéd her right.   The other instructions asked by the appellant, which were refused, need not be noticed in detail. Several of them assert a proposition, the converse of that contained in the instruction given at the instance of the respondent; and the others are based upon the hypothesis of a gift of the slaves, and an abandonment from lapse of time.

The instructions given present the law of the case fully and fairly to the jury upon the evidence.   The first instruction only asserts in effect that a party can not be divested of his property without his consent, and that when he does part with it he may annex such lawful conditions to the transfer as he may think proper.   This is substantially the instruction.   There is no controversy as to the right of the respondent to the property under the will, nor as to the right of the appellant to a share of it in right of his wife at the termination of the widow's life estate.   It is insisted, however, that, having consented to a partition of the slaves and a delivery of possession of a part of them to the appellant, without notifying him of the condition she annexed thereto, she can not now avail herself of it, in seeking to reclaim them. If the executor acted prematurely and without authority in making partition of the slaves and delivering them to the heirs, then such illegal act can not divest the title of respondent, and she can reclaim them at any time, as she could recover any other property to which she might be entitled.   If the partition and the delivery pursuant to it were made with the intention and expectation on the part of the heirs and executor that it should be final, and pass the life estate of the widow, it was no act of hers, no arrangement to which she was a party, and by which she can not be bound unless it was in accordance with the terms she prescribed.   In such case the possession acquired by the appellant was acquired without the consent of the respondent and does not bind her.

John S. McCune, through whose instrumentality the partition was made, seems to have acted for both parties, and not as the agent peculiarly of the respondent.   But, if he is to be regarded as the agent of the respondent, he was an

agent with limited and specific powers as to the particular transaction, and his agency must be construed according to its real nature and extent; and the other party must have acted at his own peril, and was bound to inquire into the nature and extent of the authority actually conferred. In such cases there is no ground to contend that the principal ought to be bound by the acts of the agent beyond what he has authorized, because he has not misled the confidence of the other party who has dealt with the agent. Each party is equally innocent, and, in a just sense, it can not be said that the principal has enabled the agent to practice any deception on the other party. (Story on Agency, 122–4.)

The judgment will be affirmed; Judge Napton concurring. Judge Scott absent.